UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEMARIE VAZQUEZ,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. CV 14-3611 AGR<br><br><br>MEMORANDUM OPINION AND<br>ORDER |

　　　Plaintiff Rosemarie Vazquez filed this action on May 9, 2014.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 8, 10.)  On January 26, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

　　　Having reviewed the entire file, the court affirms the decision of the Commissioner.

## I.

## PROCEDURAL BACKGROUND

On October 20, 2011, Vazquez filed an application for disability insurance benefits, alleging an onset date of April 11, 2009. Administrative Record ("AR") 15, 169-70. The application was denied. AR 15, 56. Vazquez requested a hearing before an Administrative Law Judge ("ALJ"). AR 66-67. On January 15, 2013, the ALJ conducted a hearing at which Vazquez, a medical expert and a vocational expert ("VE") testified. AR 25-43. On February 8, 2013, the ALJ issued a decision denying benefits. AR 12-21. On March 13, 2014, the Appeals Council denied the request for review. AR 1-3. This action followed.

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada,* 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Vazquez last met the insured status requirements on March 31, 2012. AR 17.

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Vazquez had the severe impairments of chronic foot pain and mood disorder. *Id.* She had the residual functional capacity ("RFC") to perform medium work. AR 19. She could "perform simple jobs with understanding and remembering tasks, sustained concentration and persistence, socially interacting with co-workers/general public and adapting to work place changes frequently enough to perform low stress unskilled jobs requiring simple mistakes." *Id.* Vazquez was unable to perform any past relevant work, but there were jobs that existed in significant numbers in the national economy that she could perform such as janitor. AR 20-21.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

### C. Medical Expert

Vazquez contends that the ALJ erred in rejecting the opinion of the psychological expert, Dr. Kivowitz.

Dr. Kivowitz testified at the hearing. AR 27-30. He opined that Vazquez had the severe impairments of hard substance abuse (methamphetamine during 2001-2007) and depressive disorder. AR 28. Dr. Kivowitz noted treating notes indicating a Global Assessment of Functioning ("GAF") of 60 in October 2011 and August 2012, which was "the upper limit of moderate limitations."[2] AR 28, 294, 341. He relied on the evaluation of Dr. Izzi, an examining board certified psychologist, who opined that Vazquez could do simple repetitive tasks with limited ability to do complex tasks and moderate limitations in the area of relating to others. AR 28, 261-62. Dr. Kivowitz found moderate limitations in social functioning and concentration, and no episodes of decompensation. AR 28.

The ALJ gave significant weight to Dr. Kivowitz's opinion. AR 19. When discussing the opinion, the ALJ stated that Dr. Kivowitz agreed with Dr. Izzi's assessment, but added mild limitations in concentration. *Id.* Vazquez argues that the ALJ erred in that Dr. Kivowitz imposed moderate limitations. The Commissioner argues that any error was harmless. The court agrees. The RFC and the hypothetical to the VE are consistent with Dr. Kivowitz's opinion regarding simple repetitive tasks. AR 19, 40-41. The VE testified that the hypothetical individual could perform other work, such as a janitor, which is classified as medium work, unskilled SVP 2, Reasoning Level 2. AR 41; DICOT 381.687-018; *see Zavalin v. Colvin*, 2015 U.S. App. LEXIS 2603 (9th Cir. Feb. 20, 2015) (reasoning level 2 is consistent with limitation to simple repetitive work). Thus, any error was harmless.

---

[2] A GAF of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Text Revision 2000).

### D. Credibility

Vazquez contends that the ALJ improperly assessed her subjective symptom testimony.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13) (quotation marks omitted).[3] The ALJ may consider: (a) inconsistencies or

---

[3] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are

5

discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Vazquez testified that she suffers from panic attacks and bipolar disorder. AR 18, 32, 34. She sometimes suffers from severe headaches, extreme foot pain, and pain in the lower back and upper shoulders. AR 32, 36-37. She can stand or walk less than one hour in a day due to depression. AR 38. There are days she cannot get out of bed. AR 32, 38. She "can't really get up to take a bath" because she does not have the "will." AR 38. She is afraid of going out. AR 34. She was addicted to crystal methamphetamine but has been clean and sober for approximately five years. AR 18, 32.

The ALJ found that Vazquez's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible to the extent they were inconsistent with the RFC. AR 19. The ALJ relied on four reasons: (1) Vazquez's pain testimony was not consistent with the objective medical record; (2) the record contains very little evidence of treatment; (3) Vazquez's activities of daily living were not consistent with the alleged degree of impairment; and (4) Vazquez stopped working due to a lay-off. AR 18-20. The ALJ's reasons were legally sufficient and supported by substantial evidence in the record.

1. Objective Evidence

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d

---

plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

6

676, 681 (9th Cir. 2005). The ALJ noted that on February 14, 2012, Dr. Taylor, an examining internist, conducted a physical examination that was unremarkable. AR 18, 251-55. Vazquez complained of hypertension and joint pain, but reported that she took Tylenol for pain.[4] AR 18, 251. Dr. Taylor found normal blood pressure, no specific focal neurological findings and no obvious significant findings of joint pain. AR 18, 254. She restricted Vazquez to walking and standing no more than six hours in an eight-hour work day due to foot pain. AR 18, 254. She found no other restrictions. AR 18, 254-55.

The ALJ similarly found Vazquez's allegations of disabling mental impairments unsupported by the record. AR 18-20. On February 16, 2012, Dr. Izzi diagnosed mood disorder, NOS. AR 18-19, 261. Her ability to get along with peers or be supervised in a work-like setting would be moderately limited by her mood disorder. AR 261. Dr. Izzi found that Vazquez placed in the borderline to low average range of intellectual functioning, had a deficit in short term auditory and visual memory, and placed within the low average range of perceptual motor integration functioning. AR 19, 260-61. Her mental status examination was normal, except she had a dysphoric affect and rapid expressive speech. AR 19, 259. Dr. Izzi concluded that Vazquez could perform simple repetitive work on a consistent basis. AR 19, 261. She could respond to usual work situations regarding attendance and routine changes. AR 262.

### 2. Little Evidence of Treatment

An ALJ may rely upon an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59. The ALJ found that the record contained little evidence of treatment. AR 19. Regarding her physical impairments, Vazquez testified that she had not had treatment because she could not afford a doctor. AR 18, 36-37. While benefits may not be denied because of the claimant's failure to obtain

---

[4] *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (discounting credibility based on conservative treatment).

7

treatment for lack of funds, the ALJ noted there was no evidence Vazquez attempted to use the County facilities, which are free, for her physical ailments even though she obtained psychological therapy at the County Department of Mental Health.  AR 18; *see Flaten v. Secretary*, 44 F.3d 1453, 1464 (9th Cir. 1995) (failure to obtain treatment may support adverse credibility determination when claimant obtains other medical care during time she contends she could not afford treatment).  For her mental impairments, Vazquez saw Dr. Mueller from the County Department of Mental Health from October 2011 through July 2012.  AR 310, 331, 336.  She received therapy at the County from January through August 2012, where she participated in a DBT treatment program and attended 18 individual therapy sessions and a weekly DBT skills group.  AR 18, 294-341.  The record contains no evidence of treatment for psychological impairments prior to October 2011, and no objective evidence of treatment for her alleged physical impairments other than trips to an urgent care clinic in October 2011 due to a fall and diarrhea.[5]  AR 241-42.

### 3. Activities of Daily Living

An ALJ may consider inconsistencies between a claimant's allegations and that claimant's daily activities when weighing credibility.  *Bunnell*, 947 F.2d at 346.  The ALJ noted that Vazquez lived in a house with her parents, took care of her personal needs, did household chores (such as washing floors and bathroom), prepared meals, attended church services, and socialized with friends and family members.  AR 20, 192-99, 258.  She took care of her parents when she felt good, drove her car, watched television, read books, talked on the telephone, browsed the Internet, shopped, and accompanied her children and friend at the mall.  AR 20, 192-99.  The ALJ concluded that Vazquez's daily activities were inconsistent with her allegations.  AR 19.

---

[5] At the hearing, Vazquez testified that she "just got [her] insurance with Healthy Way LA" and they "did my chest."  AR 36.

8

Vazquez argues that the ALJ did not consider the differences between her limited daily activities and her ability to work eight hours a day, five days a week. However, an ALJ need not find that a claimant's daily activities demonstrate an ability to engage in full-time work. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Here, the ALJ properly discounted her credibility to the extent her daily activities were inconsistent with a "totally debilitating impairment." *Id.* ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). The ALJ could reasonably conclude that Vazquez's activities undermined her claims that she could not get out of bed, take a bath, or leave the house due to panic attacks or depression. Moreover, when evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

### 4. Ability to Work

The ALJ noted that Vazquez did "not appear to be too motivated to work" and had stopped working due to a lay-off. AR 19-20, 258. An ALJ may consider the reason that a claimant stopped working. *See Bruton v. Massanari*, 268 F.3d 824, 826 (9th Cir. 2001) (ALJ properly considered fact that claimant stopped working because he was laid off, not because of medical disability).

The ALJ's credibility finding is supported by substantial evidence. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)). The ALJ did not err.

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 9, 2015

_____
ALICIA G. ROSENBERG
United States Magistrate Judge